Judge Buckner,
delivered the opinion of the court.
On the 2d of July, 1818, Wallace and Hill sold and conveyed by deed, of that date, to Campbell, for, and in consideration of the sum of six thousand seven hundred and fifty dollars, for which notes were executed by Campbell to them, three lots or parcels of land, which are described in the deed, as lying in the town of Portland, and county of Jefferson. By deed of the same date, Hobson and Mordecai, conveyed to him, for a like.sum, for which notes were also executed to them by Campbell, three other lots, described as situated in the same town.
To secure the payment of those sums, Campbell executed two deeds, each hearing date on the 2d of July, 1818, conveying by one, to Wallace and Hill, the lots which they had previously conveyed to him; and by the other, to IJobson and Mordecai, the lots which they had conveyed to him. As these deeds contain similar stipulations, the following extract from that to Hobson and Mordecai, will explain the object and nature of each:
“To have and to hold the said three lots or parcels of land, with ail the appurtenances, unto the said Hob-son and Mordecai, and to their heirs and assigns, upon trust, and to the uses and purposes following, and no other, to'-wit: First, that in case the said Arthur Campbell, his heirs or assigns-do, and shall well and truly pay and satisfy, each and every of the said notes, as they shall respectively become due, that then the said Hob-son and Mordecai, their heirs or assigns shall release and re-convey the said lots, or ¡jareéis of land, with all the appurtenances, unto the said Arthur Campbell, and to his heirs and assigns, at his or their costs, and charges, within a reasonable time after request. Secondly, that forty days of grace shall be, and are hereby, allowed the said A. Campbell, and his heirs and assigns, after each of the said notes shall become due and pay *97 -able, within which to pay the same; that upon failure to pay etTch of said notes, within the days of grace, after the day of payment of each, it shall be lawful, and power and authority are hereby given, to the said Hobson and Mordecai, or the survivor of them, from time to time, to sell at public sale, on the premises, to the highest bidder, for ready money, as much of the said lots, as will pay off and satisfy each of said notes, When due, with interest, and costs of sale '; and to convey and deliver possession of the part or parts so sold, to the purchaser or purchasers-” It is further stated in those deeds, that Campbell was put into possession of all the lots, and might make sales of süch parts of them, as he might think proper, and his vendors would release to him, or his vendees, such parts as he might sell; the purchase money with interest, for such parts, being first paid to said Hobson and Mordecai.
Campbell laid off the ground, so purchased from Hobson and Mordecai and Wallace and Hill, into small lots, upon a pian, which he called “Campbell’s western enlargement of Louisville;” and exposed them publicly to sale, to the highest bidder. Whittingham and Charles Peters made a joint purchase of one of them, situated on the north side of, and adjoining Washington street, with a front of sixty feet and running back ninety feet, being part of lot No. 5-, in square No. 1J, in range No. 1, of said plan, at the price of $570, for which they executed five promissory notes to Campbell, payable at different periods.
On the 31st of July, 1818, Campbell, by deed of that date, conveyed the lot to them, with covenants of “legal seisin, right to sell, and warranty of title,” and received from them a mortgage thereon, to secure the payment of the purchase money.
In June, 1821, Whittingham filed his hill In chancery for a rescisión of the contract, on the ground of a defect of title in Campbell, at the time he executed the conveyance to him, and insists upon the deeds of trust from Campbell to Wallace and Hill, and Hobson and Mordecai, as evidence of the alleged defect. He charges, that with the exception of the first, all tho above notes have been assigned, or pledged by Campbell, to the Commercial Bank of Louisville, or to their Thnuton and *98 of himself or co-obligor, and that upóil the first, judgment had been obtained against them, which he had. replevied, Peters having in the mean time died y and that judgment had also been obtained against him on the second note, each of these judgments being in tiic name of Campbell.
He alleges, that at the time he and Peters made the .purchase, they were ignorant of the incumbrances on the lot, which had ever since remained' in possession of Campbell, and others, claiming under him; he and Pe1 ters having been unable to obtain the possession of it, On account of said incumbrances. He also alleges, that Campbell is much embarrassed in his pecuniary circumstances, and unable to pay the large demands which were in force against him, and prays for an injunction against the judgment at Jaw.
By amended bills, lie charges, that on the day of sale, when he and Peters made the purchase, a splendid plan "of the proposed enlargement of the town to be built, &e. laid off in an imposing manner, with fine broad streets, &c. was exhibited by Campbell to the company, who had convened to purchase lots, which plan he had previously published, and filed in the office of the clerk of Jefferson county; none of which streets had been, or probably ever would be opened; and that tire whole of the land, on which said enlargement was proposed to he made, had been, and still was, in the possession of Campbell and his tenants; that at said sale, Campbell fraudulently employed puffers, who bid some of the first sold lots to extravagant prices, by which means, Wliittingham and Peters were deceived as to the true value of the lot, and induced to buy it, at a price greatly beyond what it was worth;"that the lot was sold by Campbell and purchased by him and Peters, with a view to its being a town lot, having the advantage of streets, &c.; and that, without the promise and expectation of such advantages, the purchase would ■not have been made.
He moreover charges, that in suits, instituted by-Wallace and Hill, and Hobson and Mordecai against Campbell, decrees had been procured, foreclosing Campbell’s equity of redemption, in the land embraced in the above mentioned deeds of trust; and that at sales, made under those decrees, they, Wallace, Hill, Hob- *99 son and Mordecai, had purchased the whole of it, except the lot purchased by him and Peters, and a few other lots; by which the fee simple, in the proposed streets, had become completely vested in the purchasers; andhislot remained uninsulated portion of an acre, stripped of all the promised and expected advantages. He also states, that the notes assigned to the commercial bank of Louisville, had been delivered by Campbell, to the bank as collateral security; Campbell, the bank and her agents, the heirs of Peters, and one Gailbreath, to whom $100 of one of the judgments had been assigned by Campbell, were made defendants.
Campbell in his answers says, that the deeds of trustr or mortgages, constituted no defect in his title; that he was authorized by the provisions of those deeds, to make the sale; and that his vendors were thereby bound to release to him or his vendees, upon payment to them of a rateable proportion of the purchase money, which he alleges had been made; and that he had obtained a release from Wallace and Hill, for the lot purchased by Whittingham and Peters; and also a release from Hob • son and Mordecai for the same, executed by Samuel Dickerson, as commissioner, under a decree in chancery, which he had obtained,, each of which he files; and-offers to make to Whittingham, any further conveyance, upon payment of the purchase money, which might by the court be deemed necessary.
He does not deny the' allegations of the bill, as to the fact of his having filed in the clerk’s office, the plan of the proposed enlargement of the town, with streets and alleys; and the exhibition of it, at the time of the public sale of lots, when Whittingham and Peters purchased; or the charge of his having procured fictitious bidders, &c.
In the answer of the bank and her agents it is admitted, that the notes assigned to it, were pledged as collateral security only, to secure the payment of money, due by Campbell to that institution. They and Gail-breath rely upon their ignorance of the matters,, adopt Campbell’s answer, and demand proof of every obit gation not admitted.
Upon a final hearing of the cause, the circuit court decreed a perpetuation of th® injunction,and a resci *100 si oft of tile contract, To reverse the decree, tills writ of error is prosecuted.
Where a conveyance has been executed and the vendee let into possession, a court of chancery will not decree a rescisiou of the contract, where there is no other ground for claiming- its interposition, than a defect of title in the vendor. But, if the contract be tainted with fraud, it presents a proper ground upon which, to decree it vojd.
On the part of the plaintiff in error, it is contended, that the court cried in sustaining the bill, and granting the relief sought; that if it was proper for the chancellor to render any decree in favor of Whittingham, it should have been an injunction only, restraining the collection of the purchase money, until the damages, if any, sustained by him and Peters, were ascertained, by an issue out of chancery, or a trial at law; and then a perpetuation of the injunction,pro (unto.
Where a conveyance has been executed, and a vendee let into possession, a court of chancery will not decree a rescission of the contract, where there is no other ground for claiming its interposition, than a defect of title, in the vendor.
An adequate remedy in such cases, can be found ii} an action at Jaw, on the covenants contained in the deed of conveyance; and there would therefore he no propriety in, or necessity for the interference of the chancellor; sec the ease of Miller vs Long, III Marsh. 336. But if the contract be tainted with fraud-, which we consider as sufficiently established in this case, to justify the decree rendered; it vitiates the whole transaction, and presents a proper ground, upon which, to declare it void..
Wg 4° uot attach any importance to the ground assumed, that puffers were fraudulently employed by Campbell, who bid for some of the other lots; because if it be even conceded that the allegations of the bill on that point, are specific enough; and that such bidding might have indirectly enhanced the price of the lot in question, we are nevertheless of opinion, that the proof in the cause is not sufficient to bring the case within the principles of the law on that subject, so far as the hank and Gail breath are concerned.
The. charge is not denied by Campbell, and the hank adopted h.is answer as to the statements which he made; but no further; and demands proof of every allegation not expressly admitted.
Nor is it considered as necessary to determine whether upon the alleged defect of title only, the decree conld he sustained. Had the nature of Camp *101 bell’s title to the lot purchased by Whittingham and Peters been f.audulently concealed; or had he made fraudulent representations on that subject, by which the purchasers were seduced into the contract and duced to accept an insufficient title, it would have prosenled a clear case lor rescisión, notwitnsmnding his title and the incumbrances on the lot might have been matters of record; for it does not present a satisfactory defence to an allegation of fraud, in the sale of land, as to the title, to shew that the conveyance had been recorded, whereby the vendee might with proper diligence have discovered the defects complained of, and respecting which the fraud was practiced; Young vs Hopkins, &c. VI Mon. 23.
If vendor concealed the nature of his presentations" as to it, the P”n,tescitadetra although his ’ title to tho lancl anil al! the meumbrnneos on it were of re-
Whittingham expressly alleges the ignorance of himself and co-purchaser of any defect or incumbrance at the time the purchase was made, and It is not pretended that Campbell made any disclosure of the facts to them.
It is however insisted, that no injury resulted in consequence of the incumbrance on the lot, as it had been removed previous to the time of the trial, when the decree was rendered.
Whether that assertion can be maintained, depends on a fact, concerning which, the record does not furnish the most satisfactory evidence. If the whole of the lot is embraced within the boundaries of the ground conveyed by Wallace and Hill, the incumbrance was removed by the deed of release, as it has been called, or re-conveyance from them.
But if a part of it be covered by the deed from Hob-son and Mordecai, which seems to be the fact, from the decree under which Dickerson made the deed, referred to in Campbell’s amended answer, as well as from tho answer itself; and from the deposition of Poignaud it does not satisfactorily appear, that the incumbrance has been removed. The record of the case, In which the decree was entered, under which the deed was made by Dickerson is not exhibited; but from the decree, which is made a part of the present record, it is made the duty of Hobson and Mordecai to execute to Campbell, on or before a day therein named, a deed of release for one half of lot No. 5, &c. which is the one purchased by Whittingham and Peters: and *102 that if they should fail to comply with the decree, Samuel Dickerson, as commissioner, should convey the same, &c. He attempted to comply with the authority vested in him as commissioner, but executed a writing-not under seal, and purporting to have been signed by Mordecai and Hobson, through Dickerson.
by any fraudulent in tenpurohaserroceivesno injury from it if rt is released by the tuuumbrancor hearing, does not present sufficient iesGÍ3ion° of1 the contract. Omission of alicnor to disclose, at the sale, an in • cumbrance on the laud, where he is Tint a otno fori
It is'certainly not such a conveyance under the decree, as reinvested Campbell with the legal title. Resides, at the time the decree in this ease was rendered, that under which Dickerson attempted to act, was subject to revision in this court, by writ of error.
In the case of Hunt vs McConnel, I Mon. 222, it was decided, that the omission of the alienor, to disclose at the sale, an incumbrance on the land, where he is not actuated by any fraudulent intention, and the purchaser receives no injury from it, and it is released by the incumbrancer before the hearing, presented no sufficient ground for a rescisión of the contract. In that case, however, the court- remark that if the incum.^racc proved to be injurious to the purchasers, though the vendor might not have been influenced by any improper motive, the case would have assumed a much more imposing aspect, 1 or
Rut if it tvere entirely clear, that the incumbrance on l°t had been removed previous to the decree, the contract upon the other ground relied upon as to the proposed streets and alleys, would be sufficient to warrant fhc decree pronounced by the circuit court,
Jt js satisfactorily made to appear, from the proof in the cause, that the lot was sold and purchased as a town lot, to have the benefit of contiguous streets and alleys. It has not, and cannot, with the slightest plausibility, be contended, that such was not the clear and explicit understanding of the contracting parties. Now, although the vendors of Campbell were bound to relinquish to him their claim to any particular lot, upon the reception by them, of a rateable proportion of the purchase money; yet they were not, by the terms of the deed, bound to make any relinquishment, as to the ground on which the streets and alleys were proposed to be opened.
As to that Campbell knew, that he would he unable to comply with the inducements, which he held out to *103 purchasers of lots, until he paid $13,500, that being the amount for which he had executed the two deeds of trust. Those deeds were executed previous to the passage of the ac-t, prohibiting sales by trustees, unless ordered by a court; and surely it would have been an act of almost incredible folly, to give $570, for so small ap;ece of ground, situated as that is, if the purchasers had known, that their enjoyment of it, for the purposes designed, depended upon the payment by their vendor of so large a sum of money; and that upon the failure by him, to make payment, that and the adjoining ground was liable to be sold, without application to a court, or even notice to them.
Depezu, for plaintiff, Mills and Brown, for defendant,
Under the circumstances of the case, it wais the indispensable duty of Campbell, to make known the incumbrance; and his failure to,do so demands a rescisión of the contract. Upon the deeds of trust it appears that decrees have been entered by a court of chancery subjecting the whole of Campbell’s purchase from Wallace and Hill and Hobson and Mordecai, except a few lots, to sale, in payment of the sums due by him to them; that they purchased the ground, and now refuse to permit any part of the proposed streets and alleys to be opened. It moreover appears that they have not, at any time been opened; and in the years 1820, and 1821, Campbell rented out the ground, on which the proposed enlargement of the town was to be made, with the exception of the lots sold by him.
Whether the purchasers of lots from Campbell could compel Wallace, &c. to open them, is a question not necessary to be here considered.. It is not the duty of Whiitingham to malee the experiment.
The decree of the circuit court must be affirmed with costs.